No. 24-1550

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

DEANNA JOHNSON,

Plaintiff-Appellant,

v.

FORD MOTOR COMPANY,

Defendant-Appellee.

On Appeal from the United States District Court
for the Eastern District of Michigan
Hon. Honorable Gershwin A. Drain
District Court Case No. 2:19-cv-10167

BRIEF OF DEFENDANT-APPELLEE

KIENBAUM HARDY VIVIANO
PELTON & FORREST, P.L.C.
ELIZABETH P. HARDY
THOMAS J. DAVIS
280 N. Old Woodward Avenue
Suite 400
Birmingham, Michigan 48009
(248) 645-0000
ehardy@khvpf.com
tdavis@khvpf.com

GIBSON, DUNN & CRUTCHER LLP
BLAINE H. EVANSON
3161 Michelson Drive
Irvine, California 92612
(949) 451-3805
bevanson@gibsondunn.com

BRIAN YEH
200 Park Avenue
New York, New York 10166
(212) 351-6252
byeh@gibsondunn.com

*Attorneys for Appellee Ford Motor Company*

## DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTERESTS

Pursuant to Sixth Circuit Rule 26.1, Defendant-Appellee Ford

Motor Company makes the following disclosure:

Is said party a subsidiary or affiliate of a publicly owned corporation?

No.

Is there a publicly owned corporation, not a party to the appeal, who has a financial interest in the outcome?

None known.


Dated:  October 21, 2024                    Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Blaine H. Evanson*
        Blaine H. Evanson

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT......................................xi

INTRODUCTION .................................................................................. 1

STATEMENT OF JURISDICTION ..................................................... 3

ISSUES PRESENTED ......................................................................... 3

STATEMENT OF THE CASE ............................................................. 4

    I.    The Alleged Harassment. ..................................................... 5

    II.   Plaintiff Complains about Rowan's Behavior, Ford Investigates, and Rowan Is Terminated. ............................... 6

    III.  Procedural History................................................................ 9

    IV.  The Trial Record. ................................................................ 12

    V.   The District Court Denies Plaintiff's Motion for a New Trial.................................................................................. 20

SUMMARY OF ARGUMENT ........................................................... 21

STANDARDS OF REVIEW ............................................................... 23

ARGUMENT...................................................................................... 27

    I.    The District Court Did Not Abuse Its Discretion in Denying Plaintiff's Motion for a New Trial. ......................... 27

        A.   The Jury Reasonably Found that Ford Had No *Actual* Notice of the Alleged Harassment.................... 27

           1.   Documentary Evidence......................................... 28

           2.   Testimonial Evidence........................................... 29

        B.   The Jury Reasonably Found that Ford Had No *Constructive* Notice of the Alleged Harassment......... 33

    II.   The District Court Did Not Err in Denying Plaintiff Leave to Amend the Complaint................................................ 37

        A.   The Law of the Case Doctrine Bars Plaintiff's Appeal of the Denial of Her Motion for Leave to Amend. .............................................................. 37

B.    The District Court Did Not Err in Denying Leave to Amend to Add a Claim for Retaliation.........40

1.    Undue Delay. ...........................................................41

2.    Futility. ..................................................................43

III.    The District Court Did Not Err in Dismissing Plaintiff's Quid Pro Quo Harassment Claims on Summary Judgment. ..............................................................45

A.    The District Court's Grant of Leave to Amend Did Not Bar the Court from Granting Summary Judgment to Ford on the Quid Pro Quo Claim. ...........45

B.    The District Court's Grant of Summary Judgment on the Quid Pro Quo Claim Was Correct. ...............................................................49

CONCLUSION ....................................................................58

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ............................................................... 27

*Armstrong v. City of Melvindale*,
    432 F.3d 695 (6th Cir. 2006) ............................................... 34

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................... 43

*Barhouma v. Athenian Assisted Living*,
    2015 WL 5437786 (N.D. Ohio Sept. 15, 2015) ................... 57

*Barnes v. Owens-Corning Fiberglas Corp.*,
    201 F.3d 815 (6th Cir. 2000) ........................................ 23, 24

*Biver v. Saginaw Twp. Cmty. Schs.*,
    1986 WL 18062 (6th Cir. Oct. 27, 1986) ............................. 32

*Boxill v. O'Grady*,
    935 F.3d 510 (6th Cir. 2019) ........................................ 43, 44

*Cacciavillano v. Ruscello, Inc.*,
    1996 WL 668530 (E.D. Pa. Nov. 15, 1996) ......................... 31

*Caldwell v. Moore*,
    968 F.2d 595 (6th Cir. 1992) ............................................... 39

*Carrero v. New York City Housing Auth.*,
    890 F.2d 569 (2d Cir. 1989) ........................................ 53, 54

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ............................................................... 26

*Chambers v. Trettco, Inc.*,
    614 N.W.2d 910 (Mich. 2000) ...................................... 50, 53

*Clabo v. Johnson & Johnson Health Care Sys., Inc.*,
    982 F.3d 989 (6th Cir. 2020) ............................................... 26

v

*Cruz v. New York State Dep't of Corr. & Cmty. Supervision*,
   2014 WL 2547541 (S.D.N.Y. June 4, 2014)...................................54, 55

*Decker v. GE Healthcare Inc.*,
   770 F.3d 378 (6th Cir. 2014)...............................................................24

*Denhof v. City of Grand Rapids*,
   494 F.3d 534 (6th Cir. 2007)...............................................................24

*Doe v. Mich. State Univ.*,
   989 F.3d 418 (6th Cir. 2021)...............................................................25

*Douglas v. Caldera*,
   29 F. App'x 257 (6th Cir. 2002) .........................................................55

*Duggins v. Steak 'N Shake, Inc.*,
   195 F.3d 828 (6th Cir. 1999)...............................................................41

*FCA US, LLC v. Spitzer Autoworld Akron, LLC*,
   887 F.3d 278 (6th Cir. 2018)...............................................................26

*Fogel v. Chestnutt*,
   668 F.2d 100 (2d Cir. 1981) ...............................................................38

*Gostanian v. Bendel*,
   1997 WL 214966 (S.D.N.Y. Apr. 25, 1997) .......................................57

*United States ex rel. Harper v. Muskingum Watershed
Conservancy Dist.*,
   842 F.3d 430 (6th Cir. 2016)...............................................................25

*Hartleip v. McNeilab, Inc.*,
   83 F.3d 767 (6th Cir. 1996)................................................................36

*Hernandez v. Jackson, Lewis, Schnitzler & Krupman*,
   997 F. Supp. 412 (S.D.N.Y. 1998).......................................................57

*Heskin v. Insite Advert., Inc.*,
   2005 WL 407646 (S.D.N.Y. Feb. 22, 2005).........................................58

*Holland v. Best Buy Stores, L.P.*,
   2018 WL 4679610 (E.D. Mich. Sept. 28, 2018) ..................................52

*Holmes v. City of Massillon, Ohio,*
78 F.3d 1041 (6th Cir. 1996)......................................................23, 24

*Howe v. City of Akron,*
801 F.3d 718 (6th Cir. 2015)......................................................46, 49

*JGR, Inc. v. Thomasville Furniture Indus., Inc.,*
550 F.3d 529 (6th Cir. 2008).............................................................39

*Johnson v. Ford Motor Co.,*
13 F.4th 493 (6th Cir. 2021) .............................................................11

*Knight Capital Partners Corp. v. Henkel AG & Co., KGaA,*
930 F.3d 775 (6th Cir. 2019).............................................................41

*Koger v. Mohr,*
964 F.3d 532 (6th Cir. 2020).............................................................34

*LaMarca v. City of Niagara Falls,*
2016 WL 8674161 (W.D.N.Y. Feb. 12, 2016) .....................................57

*Maple Hill Apartment v. Pierce,*
1986 WL 17248 (6th Cir. July 17, 1986) ...........................................48

*Martinez v. Bd. of Educ. of Prince George's Cnty.,*
2020 WL 4926610 (D. Md. Aug. 21, 2020) ........................................57

*Max Arnold & Sons, LLC v. WL Hailey & Co, Inc.,*
452 F.3d 494 (6th Cir. 2006).............................................................48

*McDonald v. Petree,*
409 F.3d 724 (6th Cir. 2005).............................................................24

*McKenzie v. BellSouth Telecommc'ns, Inc.,*
219 F.3d 508 (6th Cir. 2000).............................................................49

*McMillan v. Collection Professionals Inc.,*
455 F.3d 754 (7th Cir. 2006).............................................................47

*Newell Rubbermaid, Inc. v. Raymond Corp.,*
676 F.3d 521 (6th Cir. 2012).............................................................51

*Newman v. Fed. Express Corp.*,
266 F.3d 401 (6th Cir. 2001)................................................. 39

*Nolan v. Memphis City Schs.*,
589 F.3d 257 (6th Cir. 2009)................................................. 24

*Perks v. Town of Huntington*,
251 F. Supp. 2d 1143 (E.D.N.Y. 2003) ................................. 57

*Piazza v. Aponte Roque*,
909 F.2d 35 (1st Cir. 1990) .................................................. 40

*Pitter v. Community Imaging Partners, Inc.*,
735 F. Supp. 2d 379 (D. Md. 2010)....................................... 56

*Pratt v. Ventas, Inc.*,
365 F.3d 514 (6th Cir. 2004)................................................. 40

*Qiu v. Univ. of Cincinnati*,
803 F. App'x 831 (6th Cir. 2020) .................................... 44, 45

*Quern v. Jordan*,
440 U.S. 332 (1979).............................................................. 46

*Ridgway v. Ford Dealer Comput. Servs., Inc.*,
114 F.3d 94 (6th Cir. 1997).................................................. 32

*Robbins v. New Cingular Wireless PCS, LLC*,
854 F.3d 315 (6th Cir. 2017)................................................. 25

*Scarbary v. Ga. Dep't of Nat. Resources*,
2017 WL 1132726................................................................. 57

*SFS Check, LLC v. First Bank of Del.*,
774 F.3d 351 (6th Cir. 2014)................................................. 46

*Sheet Metal Workers' Health & Welfare Fund of N.C. v. Law
Off. of Michael A. Demayo, LLP*,
21 F.4th 350 (6th Cir. 2021) ................................................ 34

*Sherley v. Sebelius*,
689 F.3d 776 (D.C. Cir. 2012) .............................................. 46

*Smith v. Perkins Bd. of Educ.*,
   708 F.3d 821 ................................................................. 48

*Sowers v. Kemira, Inc.*,
   701 F. Supp. 809 (S.D. Ga. 1988) ..................................... 57

*Swanigan v. FCA US LLC*,
   938 F.3d 779 (6th Cir. 2019)............................................ 25

*Pittman ex rel. Sykes v. Franklin*,
   282 F. App'x 418 (6th Cir. 2008) ..................................... 39

*U.S. Structures, Inc. v. J.P. Structures, Inc.*,
   130 F.3d 1185 ................................................................ 51

*United States v. Adesida*,
   129 F.3d 846 (6th Cir. 1997)....................................... 38, 40

*United States v. Betro*,
   115 F.4th 429 (6th Cir. 2024) .......................................... 25

*United States v. Callahan*,
   801 F.3d 606 (6th Cir. 2015)........................................... 25

*United States v. Hughes*,
   505 F.3d 578 (6th Cir. 2007)........................................... 25

*Vittetoe v. Blount Cnty., Tenn.*,
   861 F. App'x 843 (6th Cir. 2021) ..................................... 47

*Vredevelt v. GEO Grp., Inc.*,
   145 F. App'x 122 (6th Cir. 2005) ..................................... 37

*Waldo v. Consumers Energy Co.*,
   726 F.3d 802 (6th Cir. 2013)....................................... 31, 32

*Weston v. AmeriBank*,
   265 F.3d 366 (6th Cir. 2001)........................................... 26

*Zackery v. Auto Air Composites, Inc.*,
   1993 WL 146687 (W.D. Mich. Feb. 17, 1993) ................... 52

*Zaluski v. United Am. Healthcare Corp.*,
527 F.3d 564 (6th Cir. 2008)...............................................................47

## Other Authorities

18B Charles Alan Wright, Arthur R. Miller, and Edward H.
Cooper, *Federal Practice and Procedure: Jurisdiction and Related Matters* § 4478 (4th ed. 2015)...................................................49

## Rules

Fed. R. App. P. 3 ................................................................................38

Fed. R. Civ. P. 56 ....................................................................26, 45, 51

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellee Ford Motor Company believes that the facts and legal arguments are adequately presented in the briefs and in the record, and the issues on appeal are straightforward. Oral argument is therefore unnecessary to resolve this appeal. However, Ford is happy to appear for oral argument if the Court has questions or otherwise deems that oral argument would be helpful.

# INTRODUCTION

After an eight-day trial following nearly five years of litigation, the jury returned a unanimous verdict in favor of Defendant-Appellee Ford Motor Company on both of Plaintiff-Appellant DeAnna Johnson's claims of alleged harassment.  That verdict is supported by a mountain of documentary and testimonial evidence that Ford was not on notice of the alleged harassment before November 25, 2018.  Against the great weight of this evidence, Plaintiff had only her own uncorroborated say-so, which was riddled with inconsistencies and which the jury was free to—and did—discredit based on Plaintiff's admissions that, among other things, she lied to obtain employment at Ford, made similar discrimination claims against a previous employer, and had a financial motivation in bringing this action.

Plaintiff now asks this Court to undo that determination and usurp the jury's role in weighing the evidence and evaluating witness credibility.  Plaintiff's appeal rests on the mistaken premise that because the district court observed in denying Ford's motion for a directed verdict that she had "presented 'a ton of evidence'" in support of her sexual harassment claim, the jury could not have returned the verdict that it

did. But the volume of evidence presented by Plaintiff is not the test for whether Plaintiff is entitled to the extraordinary remedy of a new trial. The relevant inquiry is instead whether a reasonable jury could have returned the verdict that it did. Based on the substantial body of testimonial and documentary evidence that Ford presented at trial, coupled with Plaintiff's lack of credibility or corroborating witnesses, the answer to that question is unequivocally yes.

As the district court noted in denying Plaintiff's motion for a new trial, "Plaintiff's focus on the testimony she offered and evidence she presented misses the point. Defendant also offered significant contrary evidence that the jury had the opportunity to weigh. The jury had the opportunity to assess Plaintiff's credibility, which was in significant doubt given her prior inconsistent statements, history of lying to get employed, and lack of corroborating witnesses. The jury also viewed each party's exhibits, heard how the witnesses performed on cross examination, and assuredly considered the believability of each side's narrative." The district court was absolutely correct, and this Court should affirm the denial of Plaintiff's motion for a new trial.

2

Plaintiff's appeal of the denial of her motion for leave to amend her complaint is barred by the law of the case doctrine because she failed to raise the issue in her previous appeal to this Court, and the district court's ruling is therefore already final. Even if she had, the district court's order should be affirmed because Plaintiff's motion was untimely and because the proposed amendment would have been futile, given that Plaintiff failed to allege a nexus between her termination and her engagement in protected activity.

The district court's grant of summary judgment to Ford on Plaintiff's quid pro quo claim should be affirmed as well because Plaintiff does not identify any genuine issue of material fact as to whether Ford subjected her to a tangible employment action by someone with supervisory powers.

## STATEMENT OF JURISDICTION

The district court had jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED

1. Whether the district court acted within its discretion in denying Plaintiff's motion for a new trial where Ford presented extensive

testimonial and documentary evidence that it suspended the alleged harasser immediately upon learning of the alleged harassment, and had no prior knowledge of the alleged conduct?

2.     Whether the district court properly denied Plaintiff's motion for leave to amend the complaint to allege a retaliatory discharge claim?

3.     Whether the district court correctly granted summary judgment to Ford on Plaintiff's quid pro quo harassment claim?

## STATEMENT OF THE CASE

Ford first hired Plaintiff as a salaried production supervisor, or "process coach," at its Dearborn Truck Plant on June 25, 2018.  9/19/23 Tr., R.201, PageID# 4891, 4903.  She was assigned to the frame-engine line and was trained by fellow process coach Darnell Wilson.  *Id.*, PageID# 4897, 4793.

After training with Wilson on the frame-engine line for approximately one week, Plaintiff was assigned to work with fellow process coach Nick Rowan.  9/19/23 Tr., R.201, PageID# 4900.  Her team included senior process coach Rich Mahoney and team manager Billy Markavich.  9/18/23 Tr., R.200, PageID# 4586.  The team frequently

communicated through text message about work-related matters.  *Id.*,

PageID# 4588.

## I.    **The Alleged Harassment.**

Plaintiff claimed that within her first week of training with him,

Rowan began making inappropriate comments and sending her

inappropriate text messages.  9/19/23 Tr., R.201, PageID# 4906–07, 4913.

For example, Plaintiff asserted that Rowan demanded that Plaintiff send

him pictures of her vagina and made accompanying lewd comments.

9/19/23 Tr., R.201, PageID# 4920.  Plaintiff also claimed that Rowan

referred to her in racially and sexually charged language (9/20/23 Tr.,

R.203, PageID# 5046–52), and sent inappropriate pictures of himself to

Plaintiff, including a picture of his erect penis and a picture of his crotch

in bikini underwear.  *See* Pl. Tr. Ex. 3, R.211-2, PageID# 5544–62; 9/18/23

Tr., R.200, PageID# 4513–63.  Plaintiff claimed that at one point, Rowan

pushed her against a wall and grabbed her breast.  9/20/23 Tr., R.203,

PageID# 5077–78.

Several months after starting on the frame-engine line, Plaintiff

moved to the C-Crew and ultimately to the Chassis 4/5 line, which was

approximately half a mile away from the area that Plaintiff had been

working with Rowan. 9/19/23 Tr., R.201, PageID# 4740. Although no longer in Rowan's area, Plaintiff continued to text him for help with work matters and exchanged pleasantries with him. 9/21/23 Tr., R.204, PageID# 5248–50.

## II. Plaintiff Complains about Rowan's Behavior, Ford Investigates, and Rowan Is Terminated.

On November 25, 2018, Plaintiff reported Rowan's conduct to LaDawn Clemons, a crew operations manager at the plant. 9/20/23 Tr., R.203, PageID# 5082. Plaintiff told Clemons that Rowan had been harassing her, soliciting explicit pictures from her, sending her explicit pictures of himself, and in one instance had assaulted her. *Id.*, PageID# 5083; *see also* 9/15/23 Tr., R.199, PageID# 4354–55, 4358–59.

Clemons testified that she told Plaintiff in the November 25 meeting that she needed to report the incident to HR, at which point Plaintiff began to cry. *Id.*, PageID# 4366–67.

Clemons was interviewed the next day by Leslie Harris, a human resources manager, and then again on December 10, 2018, by Mario Spadafora in the Personnel Relations Department. 9/15/23 Tr., R.199, PageID# 4375. Harris's notes say nothing about Plaintiff having reported Rowan's conduct to Mahoney or Markavich. *See* Pl.'s Tr. Ex. 23,

6

R.211-11, PageID# 5591.  Instead, the notes report that Plaintiff said she feared being called a "snitch," suggesting that she did *not* tell others about the incident.  *Id.*  Clemons told Harris that Plaintiff "was very hesitant to reveal" the name of the alleged harasser and that she "had to convince her to provide the name because it will assist the company to stop it." *Id.*

Harris interviewed Plaintiff on November 26, 2018.  9/19/23 Tr., R.201, PageID# 4854.  He took the allegations against Rowan seriously, and took contemporaneous notes of the interview.  *Id.*, PageID# 4859. His notes do not indicate that Mahoney, Markavich, or any other employee knew of the alleged harassment.  *See* Pl.'s Tr. Ex. 134-R, R.213-1, PageID# 5711–12.  Instead, Plaintiff indicated that she told only Clemons about the situation.  *Id.*, PageID# 5711.  Plaintiff left the plant premises after her interview.  9/15/23 Tr., R.199, PageID# 4442.

Harris interviewed Rowan the same day.  9/19/23 Tr., R.201, PageID# 4854.  And immediately following the interview, Harris suspended Rowan "because of the nature of the material that I had presented to me with the pictures and the allegations and his—his

7

inability to explain away the pictures and text messages that were alleged." *Id.*, PageID# 4855.

The morning after Harris suspended Rowan, Plaintiff claimed (to Harris) that she previously reported Rowan's alleged harassment to Mahoney and Markavich. 9/19/23 Tr., R.201, PageID# 4857. She had not told Harris this previously. *See id.*, PageID# 4858–59 (Harris: "I did not have any clue that I needed to interview [Mahoney] until I spoke with [Plaintiff] on the 27th, the very next day, ... when she told me about Mahoney. And so that's why I knew I needed to interview him, and his next opportunity to be at work was on that Friday the 30th, because he was on C crew.").

As a result of this new allegation, Harris interviewed Markavich, who stated he "knew nothing about" Plaintiff's allegations and that "[t]he most [Plaintiff] ever talked about is that [Rowan] is weird." Pl.'s Tr. Ex. 138-R, R.213-3, PageID# 5716. In Markavich's words, "[a]s best as I knew they were buddies at work. I knew they were friends outside of work." *Id.* Markavich was subsequently interviewed by Spadafora, and again confirmed that he was not aware of alleged sexual harassment by

Rowan before November 25, 2018. *See* Pl.'s Tr. Ex. 38-b, R.211-15, PageID# 5599–601.

Harris also interviewed Mahoney, who also did not know that Rowan had been harassing Plaintiff, and stated that Plaintiff had told him only that "Nick and her weren't getting along." Pl.'s Tr. Ex. 139-R, R.213-4, PageID# 5720. Mahoney told Harris that he communicated to Plaintiff that "if she needed me to talk to him or if she needed to talk[,] to come to me[,] and she didn't want me to talk to him. Then I saw them two hours later going to lunch and they were really friendly." *Id.*

Rowan was terminated on December 21, 2018, after the conclusion of the investigation. 9/19/23 Tr., R.201, PageID# 4855.

### III. Procedural History.

Plaintiff commenced this action on January 17, 2019, asserting claims under 42 U.S.C. § 1981, Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), and Michigan common law. Plaintiff alleged that she had been subjected to a sexually and racially hostile work environment, that she had been sexually assaulted by Rowan, and that she had been forced off work on unpaid medical leave. Compl., R.1, PageID# 1–11.

Plaintiff filed a motion for leave to amend the complaint on October 16, 2019, seeking to allege claims for quid pro quo harassment and retaliatory termination. Mot. for Leave to File First Am. Compl., R.27, Proposed First Am. Compl. 27-1, PageID# 388–408. Plaintiff's proposed amended complaint contained new allegations that she had been terminated in retaliation for "protected activity." Proposed First Am. Compl., R.27-1, PageID# 402. In support of her motion, Plaintiff argued that the factual predicate for her retaliatory termination claim had only arisen "recently." Mot. for Leave to Amend, R.27, PageID# 390. The district court granted Plaintiff leave to allege a quid pro quo sexual harassment claim but denied leave with respect to her proposed retaliation claim. Opinion & Order, R.45, PageID# 649, 654.

Ford moved for summary judgment, and also moved to strike certain paragraphs of an affidavit filed by Plaintiff in opposition to Ford's motion as a sham. Mot. for Summ. J., R.51, PageID# 693–727; Reply in Supp. of Mot. for Summ. J., R.59, PageID# 1561–76. The district court struck certain paragraphs of the affidavit (Amended Opinion & Order, R.61, PageID# 1630), and granted summary judgment to Ford on Plaintiff's § 1981 claim, concluding that the alleged racial harassment

10

described by Plaintiff was not "sufficiently severe or pervasive." *Id.*, PageID# 1637–42. The district court also declined to exercise supplemental jurisdiction over Plaintiff's state-law assault and battery claims and dismissed them without prejudice. *See id.*, PageID# 1644; Judgment, R.62, PageID# 1646.

Plaintiff appealed the district court's order granting in part and denying in part Ford's summary judgment motion, its denial of Plaintiff's motion for reconsideration, and its judgment dismissing her state-law claims without prejudice. Notice of Appeal, R.69, PageID# 1708. She did *not* appeal the court's order granting in part and denying in part her motion for leave to amend the complaint. *Id.*

This Court reversed the district court's grant of summary judgment and remanded for further proceedings. *See Johnson v. Ford Motor Co.*, 13 F.4th 493, 507 (6th Cir. 2021). It held that the court abused its discretion in striking one of the paragraphs but did "not disturb the district court's ruling on" the remaining paragraphs. *Id.* at 500 & n.5. And the Court reversed the grant of summary judgment to Ford on Plaintiff's racial harassment and racially hostile work environment claim under § 1981, finding the existence of a genuine issue of material fact as

to whether Plaintiff experienced severe and pervasive racial harassment. *Id.* at 506–07.

On remand, the district court ordered Plaintiff to file a second amended complaint, including the previously dismissed state-law assault and battery claims.  Order, R.80, PageID# 1796–1801.  Ford again moved for summary judgment, which the court granted in part and denied in part.  Opinion & Order, R.100, PageID# 1937–72.  The court granted the motion with respect to Plaintiff's quid pro quo sexual harassment and assault and battery claims, and denied the motion with respect to Plaintiff's ELCRA sexual harassment and hostile work environment claims and her § 1981 racial harassment/racially hostile work environment claim, concluding that there was a genuine issue of material fact as to whether Ford had knowledge of the alleged racial and sexual harassment experienced by Plaintiff.  *Id.*, PageID# 1959, 1961, 1971.

## IV.  The Trial Record.

On September 14, 2023, the parties proceeded to trial on Plaintiff's sexual harassment and racial harassment claims.  Over the course of five days, the jury heard from eight witnesses, including Plaintiff DeAnna

Johnson, Nicholas Rowan, LaDawn Clemons, Richard Mahoney, Billy Markavich, and Leslie Harris.

***Plaintiff DeAnna Johnson.***    At trial, counsel for Ford elicited testimony from Plaintiff that significantly undermined her credibility. Among other things, Plaintiff testified that she misrepresented her prior work experience in the resume she submitted to Ford when applying for the process coach position.  9/19/23 Tr., R.201, PageID# 4890.  Plaintiff admitted that although she only worked at a company called Cadillac Plastics for approximately one month, she represented on her resume that she worked there for seven years.  9/21/23 Tr., R.204, PageID# 5167. Plaintiff also represented that she worked at a company called Triton when in fact she had not.  *Id.*, PageID# 5171.  Plaintiff did not dispute any of these misrepresentations, and acknowledged she was "smudging [her] résumé."  *Id.*, PageID# 5175.

Ford also presented the jury with testimony and documentary evidence regarding Plaintiff's possible financial motivation in bringing this action.  For example, Plaintiff was confronted with a text message that she sent to her friend six days after Rowan allegedly sent her an explicit picture in which she wrote, "[J]ust left my lawyer.  Sorry.  I've

13

had to get that bag.  L. O. L." 9/21/23 Tr., R.204, PageID# 5268.  When asked whether "that bag refers to a bag of money," Plaintiff stated, "Of course, it does, yes." *Id.*, PageID# 5267.

The jury also heard testimony that Plaintiff sued her previous employer for sexual harassment, and told a nearly identical story—including claiming that she reported the harassment to a supervisor who rebuffed her by saying, "[W]ell, why don't you go ahead and sleep with him"—an allegation that Plaintiff admitted was "remarkably similar" to what she claimed Mahoney said to her with respect to Rowan.  9/21/23 Tr., R.204, PageID# 5260; *see also id.*, PageID# 5188 (claiming that Mahoney said, "Do us all a favor and f*** [Rowan] and get it over with."). Plaintiff also conceded—just as in this case—that she complained to her previous manager "more than 30 times," which was "a number that [she] used to describe the number of times [she] ... heard harassing comments from Mr. Rowan and ... complained about them." *Id.*, PageID# 5261.

Plaintiff also had difficulty explaining various inconsistencies in her story.  Plaintiff testified, for example, that when she met with Harris on November 26, 2018, she did not tell him that she had reported Rowan's alleged harassment to Mahoney and Markavich because she was

"literally frightened of Mr. Mahoney ... and I was frightened of Markavich." 9/21/23 Tr., R.204, PageID# 5191. At the same time, however, she testified that on her way to HR that same day, she stopped and said to Mahoney, "I am going to HR and I am going to tell on you." *Id.*, PageID# 5192–93. And when asked why she was purportedly able to tell Clemons about Mahoney and Markavich but not Harris, Plaintiff had no real answer. *Id.*, PageID# 5198.

The jury also heard Plaintiff contradict allegations in her complaint and deposition testimony. For example, Plaintiff testified that when Rowan allegedly sent her a picture of his penis, she "immediately" showed it to Mahoney. 9/21/23 Tr., R.204, PageID# 5199. But when reminded that her complaint alleged that she showed Mahoney the picture only after she went to the hospital and returned to work several days later, Plaintiff admitted that it was "[a]pparently ... [c]orrect" that the sequences differed. *Id.*, PageID# 5201.

In addition to these inconsistencies and misrepresentations, Plaintiff admitted there was no documentary evidence that she complained to Mahoney or Markavich prior to November 25, 2018. 9/21/23 Tr., R.204, PageID# 5204.

15

The jury heard about a similar lack of documentary evidence regarding Plaintiff's other allegations of harassment. Plaintiff conceded that although she testified that Rowan texted her several times per week to "[s]end me pics of your vagina," not a single text exchanged between Plaintiff and Rowan contained such words. 9/21/23 Tr., R.204, PageID# 5210. Nor did Plaintiff's phone contain any text message from Rowan saying, "Show me the titties," as Plaintiff alleged. *Id.*, PageID# 5208.

Plaintiff did not call any witnesses to corroborate her version of events and could not explain why her testimony contradicted that of every other witness. When asked whether her "story is, everyone is lying but for you," Plaintiff responded, "Pretty much." 9/21/23 Tr., R.204, PageID# 5163.

***Billy Markavich.*** Markavich testified as Plaintiff's team manager at the plant that he "had absolutely no idea" that Rowan was harassing Plaintiff. 9/19/23 Tr., R.201, PageID# 4743. Had Markavich known that Rowan was harassing Plaintiff, he would have "pulled [him] off of the floor" because "I'm not built like that when it comes to sexual harassment. I was raised by a single mother and I have three daughters." Pl.'s Tr. Ex. 138-R, R.213-3, PageID# 5717.

Similarly, Markavich testified that he never heard Rowan make inappropriate comments of a sexual or racial nature to anybody, including Plaintiff, whether directly or over the radio. 9/19/23 Tr., R.201, PageID# 4805–06. Nor did Markavich ever observe "anything out of the ordinary in how Rowan [interacted] with other people on the line, male or female, hourly or otherwise." *Id.* at 4806.

***Richard Mahoney.*** Mahoney was in charge of the motor bay, which was approximately 500 to 800 feet away from the frame-engine line where Plaintiff worked. 9/18/23 Tr., R.200, PageID# 4633, 4681. Mahoney testified about Ford's "zero tolerance" harassment policy, which Mahoney understood to mean that he could be terminated if he did not report harassment. *Id.*, PageID# 4665.

When asked whether he was aware that Rowan had sexually harassed Plaintiff, Mahoney testified, "I didn't know. Had I known, I'd have taken him to HR." 9/18/23 Tr., R.200, PageID# 4605. Similarly, when asked whether he was aware that Rowen had *racially* harassed Plaintiff, Mahoney testified, "I'm African American. I definitely wouldn't tolerate that." *Id.*

17

Mahoney flatly denied Plaintiff's claims that she reported Rowan's harassment to him. *See* 9/18/23 Tr., R.200, PageID# 4606, 4627 (denying that Plaintiff "had been complaining to you for months about Mr. Rowan"). To the contrary, Mahoney testified that he told Plaintiff that "if she ever had an issue with Nick, ... she could come and talk to me about it. She said she was okay." *Id.*, PageID# 4619.

Mahoney recalled a previous experience where Plaintiff alleged harassment, and he helped her report the incident. Soon after she was hired, before she was assigned to work with Rowan, Plaintiff interviewed for a position as a paint process coach, and later complained that the interviewer treated her in a disrespectful manner. 9/19/23 Tr., R.201, PageID# 4893–94. At Mahoney's recommendation, Plaintiff immediately reported the incident to Harris, who investigated the incident and disciplined the two employees involved. *Id.*, PageID# 4895; *see also id.*, PageID# 4849–52. Mahoney concluded in his trial testimony: "The one time she came and asked me for help, I'm the one that sent her to HR." 9/18/23 Tr., R.200, PageID# 4628.

Mahoney emphasized that "I never had no problems with [Plaintiff]. Anybody come to me for help, I'm going to help them. So I

18

wouldn't have—I wouldn't have hid this to protect anybody." 9/18/23 Tr., R.200, PageID# 4698.

**_LaDawn Clemons._**    At trial, Clemons testified that she never discussed Rowan with Plaintiff before their meeting on November 25. 9/15/23 Tr., R.199, PageID# 4344, 4351–53.    Clemons also disputed Plaintiff's claim that she reported to Clemons at the November 25 meeting that she previously complained of Rowan's conduct to Mahoney and Markovich.    _See_ 9/15/23 Tr., R.199, PageID# 4360 ("Q.  And one of the things that she told you that day was that her reports to her immediate bosses hadn't gone very well, correct?  A.  Regarding what?  Q. Nick Rowan?  A.  No.  She didn't tell me that.  Q.  Isn't it true that she told you Mahoney and Markavich had made a mockery of her situation with Rowan?  A.  No.").  Clemons testified that she herself never heard Rowan make any sexual or racial comments about Plaintiff, and never heard Plaintiff complain about or respond to something Rowan did "in a critical way."  _Id._, PageID# 4425–26.  When Plaintiff finally disclosed Rowan's alleged harassment, Clemons was "completely taken aback, because [she] never heard anything to that regard about Nick, whether it be sexual, racial, anger, none of it."  _Id._, PageID# 4437.

19

***Leslie Harris.*** Harris testified that in his initial interview with Plaintiff, "she did not reveal that" she "previously told Mr. Mahoney and Mr. Markavich … —about her issues with Mr. Rowan." 9/19/23 Tr., R.201, PageID# 4857. It was not "until the next morning when we had the phone discussion after she emailed me" that she revealed that detail to Harris. *Id.*

The jury returned a unanimous defense verdict in favor of Ford, finding that Plaintiff failed to prove her hostile work environment sexual harassment and racial harassment claims. 09/25/23 Tr., R.210, PageID# 5530–32.

## V.   The District Court Denies Plaintiff's Motion for a New Trial.

Plaintiff moved for a new trial, arguing that the "overwhelming weight of the evidence" presented at trial demonstrated that Ford had actual notice of Plaintiff's alleged sexual and racial harassment but failed to act for months. Mot. for New Trial, R.216, PageID# 6018, 6020–33. The district court denied Plaintiff's motion, ruling that, having considered all the evidence in the trial record, "the jury's verdict was reasonable and is supported by the weight of the evidence at trial." Order, R.220, PageID# 6092. It continued:

Plaintiff's focus on the testimony she offered and evidence she presented misses the point. Defendant also offered significant contrary evidence that the jury had the opportunity to weigh. The jury had the opportunity to assess Plaintiff's credibility, which was in significant doubt given her prior inconsistent statements, history of lying to get employed, and lack of corroborating witnesses. The jury also viewed each party's exhibits, heard how the witnesses performed on cross examination, and assuredly considered the believability of each side's narrative. Having viewed the record once more, the Court finds that there is sufficient evidence to support a verdict of no cause of action. As such, the jury's verdict that Plaintiff failed to prove her sexual and racial harassment claims was not against the great weight of evidence presented at trial.

*Id.*, PageID# 6092–93.

## SUMMARY OF ARGUMENT

**I.** The district court acted well within its discretion in denying Plaintiff's motion for a new trial. Plaintiff's supervisors testified consistently and credibly that she never reported harassment by Rowan before November 25, 2018, and it was undisputed that Ford acted swiftly and decisively to investigate the incident and terminate Rowan once the alleged conduct was reported. Plaintiff presented only her own uncorroborated and inconsistent testimony to support her claim that Ford employees knew of the alleged harassment earlier, and a reasonable jury could have found based on this evidence that Ford lacked actual notice of Plaintiff's alleged harassment. There was no basis for the

21

district court to disturb the jury's determination, particularly in light of Plaintiff's own admissions that she lied to obtain employment at Ford and brought similar discrimination claims against a previous employer. Plaintiff forfeited her appeal of the constructive notice verdict by not raising the argument she makes now before the district court. But even if she had not, a reasonable jury could have found that Ford lacked constructive notice of the alleged harassment given the lack of evidence that Plaintiff reported her concerns to her superiors, the size of and noise levels on the production floor, and similar evidence.

**II.** Plaintiff failed to raise the denial of her motion for leave to amend the complaint to allege a retaliatory termination claim in the previous appeal, and she is barred from belatedly appealing that determination now because it is already final. The district court's denial of Plaintiff's motion is law of the case, a doctrine that bars challenges to decisions made at an earlier stage of the litigation that could have been challenged in a prior appeal but were not. In any event, Plaintiff's proposed amendment was untimely because she moved to amend shortly before the close of discovery despite having been on notice of the factual predicate of her claim long before. And the proposed amendment would

have been futile because she did not adequately allege a nexus between protected activity and her termination.

**III.**  The district court correctly granted Ford summary judgment on Plaintiff's quid pro quo claim.  In granting Plaintiff leave to amend her complaint to allege a quid pro quo claim, the court ruled only that Plaintiff's allegations survived the 12(b)(6) motion to dismiss standard. At the summary judgment stage, Plaintiff was required to support her claim with evidence, and she failed to do so.  Plaintiff did not (and does not) identify any genuine dispute of material fact with respect to whether Plaintiff was subjected to a tangible employment action by someone with supervisory authority, and the district court properly granted summary judgment on that claim.

## STANDARDS OF REVIEW

**I.**  "A court may set aside a verdict and grant a new trial when it is of the opinion that the verdict is against the clear weight of the evidence." *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 820 (6th Cir. 2000).  The grant of a new trial based on weight of the evidence "effects a denigration of the jury system" because it "usurp[s] the prime function of the jury as the trier of the facts." *Holmes v. City of Massillon, Ohio*, 78

F.3d 1041, 1047 (6th Cir. 1996). Accordingly, such motions will not be granted "unless that verdict was unreasonable." *Barnes*, 201 F.3d at 821. In other words, "if a reasonable juror could reach the challenged verdict, a new trial is improper." *Id.* "Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Decker v. GE Healthcare Inc.*, 770 F.3d 378, 395 (6th Cir. 2014) (cleaned up). "A verdict is not unreasonable merely because other inferences or conclusions could have been drawn or because other results are more reasonable." *Nolan v. Memphis City Schs.*, 589 F.3d 257, 264 (6th Cir. 2009). And given the jury's core function of assessing witness credibility, it would be an abuse of discretion to grant a new trial when the case comes down to "who the jury believed." *Holmes*, 78 F.3d at 1048; *accord Denhof v. City of Grand Rapids*, 494 F.3d 534, 543–44, 547 (6th Cir. 2007) (same); *McDonald v. Petree*, 409 F.3d 724, 731 (6th Cir. 2005) (affirming denial of new trial motion because "[w]itness credibility is solely within the jury's province, and this court may not remake credibility determinations").

24

In ruling on a motion for new trial, the district court "consider[s] the credibility of the witnesses and the weight of the evidence," but "the court of appeals does not engage in this exercise." *United States v. Callahan*, 801 F.3d 606, 617 (6th Cir. 2015). Rather, this Court "simply review[s] the evidence and the district court's ruling," and reverses only where there is an abuse of discretion. *Id.*; *see also United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007) ("Our review of the trial court's ruling is limited to determining whether it was a clear and manifest abuse of discretion."). A district court abuses its discretion when it "relies on clearly erroneous findings of fact, uses an erroneous legal standard, or improperly applies the law." *United States v. Betro*, 115 F.4th 429, 443 (6th Cir. 2024).

**II.** This Court reviews the denial of leave to amend for an abuse of discretion. *Doe v. Mich. State Univ.*, 989 F.3d 418, 424 (6th Cir. 2021). Where denial of leave to amend is based on futility grounds, review is de novo. *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 322 (6th Cir. 2017); *see also Swanigan v. FCA US LLC*, 938 F.3d 779, 789 (6th Cir. 2019). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *United States ex rel.*

*Harper v. Muskingum Watershed Conservancy Dist.*, 842 F.3d 430, 440 (6th Cir. 2016).

Under the law of the case doctrine, "a party that fails to appeal an issue waives his right to raise the issue before the district court on remand or before the Sixth Circuit on appeal after remand." *FCA US, LLC v. Spitzer Autoworld Akron, LLC*, 887 F.3d 278, 286 (6th Cir. 2018) (cleaned up).

**III.** This Court reviews the grant of summary judgment de novo. *Weston v. AmeriBank*, 265 F.3d 366, 367 (6th Cir. 2001). Summary judgment is appropriate where the moving party demonstrates that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All reasonable inferences are drawn in favor of the non-moving party. *Clabo v. Johnson & Johnson Health Care Sys., Inc.*, 982 F.3d 989, 992 (6th Cir. 2020). "[S]ummary judgment must be entered were the nonmovant 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). For the non-moving party to defeat summary judgment,

26

"there must be evidence on which the jury could reasonably find for the" non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## ARGUMENT

### I.    The District Court Did Not Abuse Its Discretion in Denying Plaintiff's Motion for a New Trial.

The jury reasonably concluded that Ford lacked both actual and constructive notice of the alleged harassment by Rowan before November 25, 2018, based on the significant documentary and testimonial evidence produced by Ford at trial, Plaintiff's not-credible testimony, and her corresponding lack of corroborating witnesses. There was no abuse of discretion in the district court's denial of Plaintiff's motion for a new trial, and this Court should affirm.

### A.    The Jury Reasonably Found that Ford Had No *Actual* Notice of the Alleged Harassment.

The jury reasonably concluded that "under the totality of the circumstances," Ford did not know "of a substantial probability that Plaintiff was being ... harassed," given the voluminous documentary and testimonial evidence produced by Ford. Jury Instructions, R.194, PageID# 4075. There was a mountain of evidence from which the jury

27

could have reasonably drawn the conclusion it did, and Plaintiff's only competing evidence was her own, uncorroborated testimony.

### 1. *Documentary Evidence.*

Ford produced significant documentary evidence establishing that no Ford employee had knowledge of Rowan's alleged harassment of Plaintiff before November 25, 2018. Plaintiff did not produce any competing documentary evidence at trial. And she does not address *any* of this damning evidence in her opening brief.

For example, Plaintiff's November 26, 2018 statement to Harris does not state that Mahoney, Markavich, or any other Ford employee had prior knowledge of Rowan's harassment. *See* Pl.'s Tr. Ex. 134-R, R.213-1, PageID# 5711–12. And as Plaintiff admitted during trial, she never sent any text messages to Mahoney or Markavich to complain about Rowan. *See* 9/21/23 Tr., R.204, PageID# 5204.

Mahoney and Markavich both gave statements to HR on November 30, 2018, in which they each denied knowledge of Plaintiff's harassment. *See* Pl.'s Tr. Ex. 139-R, R.213-4, PageID# 5719–21 (Mahoney statement saying: "[Plaintiff] never told me that [Rowan] was harassing her. She told me that her and Nick weren't getting along."); Pl.'s Tr. Ex. 138-R,

R.213-3, PageID# 5716 ("The most [Plaintiff] ever talked about is that Nick is weird.  I said yes he is.  I asked if there's anything you know about.  And she said no.").

Clemons' statements to HR on November 26, 2018 and December 10, 2018 similarly do not indicate any prior knowledge of Plaintiff's harassment on the part of Mahoney or Markavich.  *See* Pl.'s Tr. Ex. 23, R.211-11, PageID# 5591; Pl.'s Tr. Ex. 38-A, R.211-14, PageID# 5595.

## 2.    *Testimonial Evidence.*

The only Ford employees who Plaintiff claimed had notice of the alleged harassment were Mahoney and Markovich.  But they both consistently and credibly testified that Plaintiff did not report any instance of harassment by Rowan before November 25, 2018, nor did they ever witness Rowan sexually harassing Plaintiff.

Markavich testified that he had "absolutely no idea" that Rowan was harassing Plaintiff.  *See* 9/19/23 Tr., R.201, PageID# 4743, 4806.  He testified that had he known, he would have reported Rowan.  In Markavich's words, "[n]obody is that valuable at Ford Motor Company that we cannot run a line without you.  Nobody, including myself."  *Id.*, PageID# 4814.  Plaintiff's testimony to the contrary evoked "a lot of

emotions" in Markavich because "I feel like I am valued as a protector type ... I would not let anybody, inside or outside the facility, get—I just wouldn't do it. I'm just not wired that way." *Id.*, PageID# 4814–15.

Mahoney likewise testified that he was unaware that Plaintiff was being sexually or racially harassed and that Plaintiff never reported such harassment. *See* 9/18/23 Tr., R.200, PageID# 4605–06, 4627. He emphasized that, had he been aware that Plaintiff was being sexually or racially harassed by Rowan, he would have reported Rowan because "[i]t's just the right thing to do." *Id.*, PageID# 4659; *see also id.*, PageID# 4631. Underscoring that point, Mahoney testified that "I have daughters and granddaughters, and I wouldn't have been able to live with myself to not report something like that .... I'm not going to put somebody in the position to have something happen to them that my daughter, who is now about to go to college, would be in that same position." *Id.*, PageID# 4674. Mahoney had "no loyalty to Nick Rowan" that would have prevented him from doing so. *Id.*, PageID# 4659. And he understood that under Ford's zero-tolerance policy, he could potentially face termination if he did not report harassment. *Id.*, PageID# 4665.

30

Given the enormous amount of documentary and testimonial evidence refuting Plaintiff's claims, the sole case Plaintiff relies on (*Waldo v. Consumers Energy Co.*, 726 F.3d 802 (6th Cir. 2013)) is inapposite. In *Waldo*, the plaintiff's supervisor admitted that, "although [the plaintiff] complained to him several times, he did not report several of the specific complaints ... to anyone in upper management." *Id.* at 817; *see also id.* at 816 ("[Defendant]'s HR representatives ... testified that they were aware of [plaintiff's] complaints regarding the harassment and had spoken with [plaintiff] several times about her complaints."). It was "clear" from witness testimony "that [the employer] was aware of [the plaintiff's] complaints, but that no formal response or investigation was undertaken." *Id.* at 817.[1]

Here, by contrast, Markavich, Mahoney, and Clemons were not aware that Plaintiff complained of harassment before November 25, 2018, and none of Plaintiff's complaints "was confirmed by other

---

[1] *Cacciavillano v. Ruscello, Inc.*, 1996 WL 668530 (E.D. Pa. Nov. 15, 1996), does not help Plaintiff either. The opinion in this out-of-circuit decision does not discuss any of the evidence presented at trial or explain why "[a] reasonable jury could not have come up with a verdict for defendants on all of the claims." *Id.* at *1.

witnesses." *Waldo*, 726 F.3d at 816. To the contrary, every Ford witness rejected Plaintiff's characterization of the events. The only evidence Plaintiff relied on was her uncorroborated say-so.

Courts routinely deny new trial motions in cases like the present, in the face of evidence from the defendant that contradicts the testimony of the plaintiff. *See, e.g.*, *Ridgway v. Ford Dealer Comput. Servs., Inc.*, 114 F.3d 94, 99 (6th Cir. 1997) (affirming denial of motion for new trial where, "[a]lthough plenty of evidence was introduced suggesting that [defendant] had cause to terminate [plaintiff], there certainly was sufficient evidence for the jury to conclude either that cause did not exist or that [defendant] fired [plaintiff] for some reason other than cause."); *Biver v. Saginaw Twp. Cmty. Schs.*, 1986 WL 18062, at *5 (6th Cir. Oct. 27, 1986) (affirming denial of motion for new trial, "[s]ince we conclude that the evidence presented in the appellant's favor was not so overwhelming that reasonable minds could not reach different conclusions whether it supports the verdict rendered").

The jury was free not to credit Plaintiff's testimony, particularly given that her trial testimony was littered with inconsistencies and false statements. *Supra* at 13–17. Plaintiff conceded that her trial testimony

was inconsistent with her deposition testimony on various issues. *See, e.g.*, 9/21/23 Tr., R.204, PageID# 5179. She admitted to lying to obtain her employment at Ford (*see id.*, PageID# 5167 (admitting to lying about working at Cadillac Plastics for seven years)); she acknowledged that she had a possible financial motivation in bringing this case (*see id.*, PageID# 5266–67 (discussing text message stating, "Just left my lawyer. Sorry I had to get that bag. L. O. L.")); and she admitted to making similar allegations against a different employer (*see id.*, PageID# 5261).

It is no wonder the jury rejected Plaintiff's testimony. It certainly was not unreasonable for the jury to find as it did. And the district court did not abuse its discretion in rejecting Plaintiff's request for a new trial.

## B. The Jury Reasonably Found that Ford Had No *Constructive* Notice of the Alleged Harassment.

Plaintiff did not properly raise her constructive notice argument below and has accordingly forfeited the argument on appeal. *See generally* Mot. for New Trial, R.216, PageID# 6008–34; *see also* Opp. to Mot. for New Trial, R.217, PageID# 6050 (noting that "Plaintiff's new trial motion does not mention her 'constructive notice' theory, let alone argue that no reasonable juror could have failed to find management had constructive notice."). Although Plaintiff belatedly raised the issue in her

33

reply brief (*see* Reply in Supp. of Mot. for New Trial, R.218, PageID# 6066–68), that was insufficient (*see Koger v. Mohr*, 964 F.3d 532, 540 n.2 (6th Cir. 2020) (argument made for first time in reply brief before district court was waived)).   "[O]mission of an issue in the district court typically will amount to a forfeiture of the issue, meaning" this Court "will not consider it on appeal." *Sheet Metal Workers' Health & Welfare Fund of N.C. v. Law Off. of Michael A. Demayo, LLP*, 21 F.4th 350, 355 (6th Cir. 2021); *see also Armstrong v. City of Melvindale*, 432 F.3d 695, 699–700 (6th Cir. 2006) ("Although both parties briefed *this* court on the issue, the failure to present an issue to the district court forfeits the right to have the argument addressed on appeal.").

Even if this Court considers this argument, the jury reasonably found that Markavich, Mahoney, and Clemons lacked constructive notice of Plaintiff's alleged harassment.  To find constructive notice, the jury had to determine that "the … harassment was so pervasive that, by an objective standard and under the totality of the circumstances, someone in higher management would have been aware of a substantial probability that … harassment was occurring." Jury Instructions, R.194,

PageID# 4075. There was more than sufficient evidence for the jury to reasonably find for Ford on this theory.

Plaintiff's only evidence that Rowan openly harassed her in a manner that others should have observed was her own non-credible testimony. Plaintiff submitted her text messages with Rowan, but no one else at Ford (or anywhere else) was copied on those text messages. Nor did any of the text messages suggest that Markavich, Mahoney, or Clemons knew of the alleged harassment or of anything at all inappropriate in Plaintiff's relationship with Rowan. When asked, for example, whether she "ever sent a single text" to Mahoney or Markavich complaining about Rowan, Plaintiff testified, "I don't believe so." 9/21/23 Tr., R.204, PageID# 5204. Markavich, Mahoney, and Clemons all testified they were not aware Plaintiff was being sexually or racially harassed, and that they would have reported Rowan had they known. *See* 9/19/23 Tr., R.201, PageID# 4743, 4806, 4814 (Markavich); 9/18/23 Tr., R.200, PageID# 4605–06, 4627, 4659 (Mahoney); 9/15/23 Tr., R.199, PageID# 4425–26, 4379 (Clemons).

Moreover, the plant floor was an extremely loud environment, with significant impediments to employees' ability to see and hear what

was happening even several feet away from them.  As Clemons testified at trial, when the production line was running, the plant floor was "super loud ...  It's always loud.  It's always controlled chaos.  But it's a little chaotic if you just hear it."  9/15/23 Tr., R.199, PageID# 4416.  Given the noise level, Ford "recommend[s], to the highest extent, hearing protection everywhere in the plant."  *Id.*  And to overhear someone else's conversation, one would need to be "[v]ery close."  *Id.* ("Let's say this is the production line.  If you and I were talking, I could barely hear you unless you raised your voice significantly.").  Mahoney was largely confined to the motor bay, which was approximately 500 to 800 feet away from the frame-engine line where Plaintiff worked and separated by conveyor belts, parts racks, tooling, seat lifters, and tire conveyors.  9/18/23 Tr., R.200, PageID# 4681–82.  And Markavich testified that he was rarely on the production floor, as he was in meetings between five and eight hours per day.  9/19/23 Tr., R.201, PageID# 4733.

There was ample basis for the jury to find that Ford lacked constructive notice of Plaintiff's alleged harassment.  *See Hartleip v. McNeilab, Inc.*, 83 F.3d 767, 777 (6th Cir. 1996) (no constructive notice where evidence showed only that plaintiff complained about alleged

harassment to "some people" who were not part of higher management and harassment was not so pervasive that constructive notice could be inferred); *Vredevelt v. GEO Grp., Inc.*, 145 F. App'x 122, 135 (6th Cir. 2005) (consideration of totality of the circumstances did not support finding of constructive notice even where plaintiff alleged that other employees complained of sexual harassment).

## II.    The District Court Did Not Err in Denying Plaintiff Leave to Amend the Complaint.

Plaintiff's next argument—that she was improperly denied leave to amend her complaint to add a retaliatory discharge claim—also fails.  It is procedurally barred under the law of the case doctrine, because Plaintiff failed to raise this issue in her previous appeal to this Court, and the district court's ruling is therefore already final.  And even if her appeal was not procedurally barred, the district court properly denied amendment on two distinct grounds: (1) the district court, acting within the ambit of its discretion, held that Plaintiff's motion would cause prejudicial delay; and (2) the proposed amendments were futile.

### A.    The Law of the Case Doctrine Bars Plaintiff's Appeal of the Denial of Her Motion for Leave to Amend.

Under the law of the case doctrine, a party cannot "challenge[] ... a decision made at a previous stage of the litigation which could have been

challenged in a prior appeal, but w[as] not." *United States v. Adesida*, 129 F.3d 846, 850 (6th Cir. 1997). That rule is premised on the notion that "[i]t would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost." *Id.* (quoting *Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir. 1981)).

Here, Plaintiff did not designate the district court's order denying her motion for leave to amend (Opinion & Order, R.45, PageID# 636–55) in her initial Notice of Appeal as required by Federal Rule of Appellate Procedure 3(c)(1)(B). *See* Fed. R. App. P. 3(c)(1)(B) (notice of appeal must "designate the judgment—or the appealable order—from which the appeal is taken."). She listed only "05/12/2020 Amended Opinion and Order Granting in Part and Denying Without Prejudice in Part Defendant's Motion for Summary Judgment and Declining Supplemental Jurisdiction, Judgment entered 05/12/2020, and 10/02/2020 Order Denying Plaintiff's Motion for Reconsideration." Notice of Appeal, R.69, PageID# 1708; *cf.* Notice of Appeal, R.222, PageID# 6099–100 (appealing various orders "and ... all other rulings and orders made or entered in this action that were adverse to Plaintiff."). Plaintiff also did not raise

38

this issue in the briefing or otherwise ask this Court to review the district court's decision denying leave to amend. As a result, the district court's order on Plaintiff's motion for leave to amend was not appealed to this Court in the previous appeal. *See Newman v. Fed. Express Corp.*, 266 F.3d 401, 404 (6th Cir. 2001) (observing that "[i]f ... an appellant chooses to designate specific determinations in its notice of appeal, only those determinations may be raised on appeal."); *see also JGR, Inc. v. Thomasville Furniture Indus., Inc.*, 550 F.3d 529, 532–33 (6th Cir. 2008) (party waived right to seek lost profit damages in retrial after remand where it failed to appeal jury's zero lost profits award in earlier trial).[2]

---

[2] Although the denial of a motion to amend is generally not immediately appealable, it becomes so "after the entry of a final order which resolves all issues between the parties." *Pittman ex rel. Sykes v. Franklin*, 282 F. App'x 418, 423 (6th Cir. 2008) (court had jurisdiction to consider denial of motion for leave to amend where district court entered final judgment); *see also Caldwell v. Moore*, 968 F.2d 595, 598 (6th Cir. 1992) (denial of motion for leave to amend is appealable "after the entry of a final judgment because the final judgment calls into question the propriety of all the nonfinal rulings of the district court."). Here, the district court's denial of leave to amend became appealable after the court granted Ford's motion for summary judgment on Plaintiff's racial harassment and racially hostile work environment claim (Count II) and dismissed Plaintiff's remaining state law claims without prejudice (Counts I and III). *See* Opinion & Order, R.61, PageID# 1644; Judgment, R.62, PageID# 1646.

39

Because Plaintiff failed to appeal the denial of her motion for leave to amend in the previous appeal, the district court's ruling on that motion became final. *See Pratt v. Ventas, Inc.*, 365 F.3d 514, 521 (6th Cir. 2004) ("Because Plaintiffs did not appeal the bankruptcy court's decision to the district court in Delaware, the judgment of the bankruptcy court is now final."); *accord Piazza v. Aponte Roque*, 909 F.2d 35, 39 (1st Cir. 1990) ("[T]he inescapable consequence of failure to appeal a judgment within the time allowed is that the judgment becomes final."). And the law of the case doctrine prevents Plaintiff from raising a subsequent challenge, whether before the district court or this Court. *See Adesida*, 129 F.3d at 850 (under law of the case doctrine, defendant "waived his right to raise ... before the district court on remand or before this court on appeal after remand" issues he failed to raise during prior appeal).

### B. The District Court Did Not Err in Denying Leave to Amend to Add a Claim for Retaliation.

The district court's order denying Plaintiff leave to amend her complaint to add a claim for retaliation under Michigan's ELCRA and 42 U.S.C. § 1981 was correct, because Plaintiff's undue delay in seeking to amend rendered her request untimely and her proposed amendment was futile.

40

### 1.    *Undue Delay.*

The district court did not abuse its discretion in holding that Plaintiff unduly delayed in moving to amend her complaint. *See* Opinion & Order, R.45, PageID# 651–54.

When a plaintiff moves to amend just before or after the close of discovery, the proposed amendment "rais[es] an inference of prejudice against its opponent." *Knight Capital Partners Corp. v. Henkel AG & Co., KGaA*, 930 F.3d 775, 786 (6th Cir. 2019). Here, Plaintiff sought leave to amend on October 16, 2019, less than thirty days before the close of fact discovery on November 11, 2019. *See* Order, R.15, PageID# 66; Mot. for Leave to Amend, R.27, PageID# 392. There was no justification for such delay, as Plaintiff acknowledged she received notice of her termination—the predicate for her retaliatory termination claim—months earlier, on August 16, 2019. *See* Opp. to Mot. for Leave to Amend, Ex. B, R.38-3, PageID# 512; *see also Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834–35 (6th Cir. 1999) (affirming denial of leave to amend where "plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint."). Under these circumstances, the district court was well within its discretion in

41

finding that Plaintiff's proposed amendment was untimely, particularly given that granting leave would have required the court to extend the discovery deadline and allow Ford to re-depose Plaintiff on that claim. Opinion & Order, R.45, PageID# 653.

Plaintiff argues that if she had truly delayed in seeking leave to amend, the district court would have denied her leave on her quid pro quo harassment claim as well, given that the factual predicate for that claim arose long before that underlying her retaliation claim. Br. at 39. That argument directly contradicts what Plaintiff told the district court. In her motion to amend, Plaintiff argued that "Plaintiff's proposed amended complaint language" with respect to the quid pro quo claim "simply clarifies the *quid pro quo* aspect of Rowan's demands" and that "Plaintiff's Complaint as originally filed already provides the facts supporting this claim." Mot. for Leave to Amend, R.27, PageID# 389–90. In other words, unlike the quid pro quo harassment claim, the proposed retaliation claim would have required the court to extend discovery.

The district court was well within its discretion to deny leave to amend given the disruption to the case schedule that amendment would have required.

42

### 2.    *Futility.*

The district court also properly denied leave to allege a retaliatory termination claim because it would not have survived a motion to dismiss. "To survive dismissal, [Plaintiff] must allege that (1) she engaged in protected activity; (2) her exercise of that activity was known by the Defendant; (3) the Defendant thereafter took an action that was materially adverse to her; and (4) there was a causal connection between the protected activity and the materially adverse action." *Boxill v. O'Grady*, 935 F.3d 510, 520 (6th Cir. 2019). Where the complaint "does not plausibly allege that any Defendant took an adverse action against [Plaintiff] *because of* her protected speech," a retaliation claim must be dismissed. *Id.* (emphasis added).

Here, Plaintiff's proposed retaliation claim was supported by nothing more than "[t]hreadbare recitals of the elements of a cause of action" and "mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff alleged that in a letter dated August 6, 2019, but not received by her until after August 13, 2019, Ford's Medical Office informed her that she had been cleared to return from medical leave and that she had until August 13, 2019 to either provide a medical reason for

her absence or return to work.   Proposed First Am. Compl., R.27-1, PageID# 401–02.   She further alleged that in a letter dated August 22, 2019 she had been terminated and processed as "quit" as of April 16, 2019.   *Id.*, PageID# 402.   As a result, Plaintiff claimed that her "termination was in retaliation for Plaintiff's protected activity, including this lawsuit." *Id.*

Even construing the proposed amended complaint in the light most favorable to Plaintiff, these allegations do not establish the required nexus between Plaintiff's termination and her protected activity because she does not explain why her termination was the result of her protected activity as opposed to her failure to meet the response deadline.

Like in *Boxill*, Plaintiff's new allegations "do[] not plausibly allege that [Ford] took an adverse action against her *because of her protected speech.*" *Boxill*, 935 F.3d at 520 (emphasis added).   There, like here, the plaintiff failed to allege any "plausible, non-conclusory facts to show that [the defendant] was even aware of her [protected activity]." *Id.* at 518. Similarly, in *Qiu v. University of Cincinnati*, 803 F. App'x 831 (6th Cir. 2020), the court affirmed the dismissal of a § 1981 retaliation claim premised on allegations that the plaintiff had been dismissed from a

university for challenging a professor's allegations of cheating. *Id.* at 840. In dismissing the claim, the court observed that the plaintiff "makes no allegation ... that the adverse action taken against him (dismissal from the university) was related to" the alleged protected activity.

### III. The District Court Did Not Err in Dismissing Plaintiff's Quid Pro Quo Harassment Claims on Summary Judgment.

Plaintiff's final argument on appeal is that the district court erred in granting summary judgment to Ford on her quid pro quo harassment claim. This Court should affirm on this ground as well.

### A. The District Court's Grant of Leave to Amend Did Not Bar the Court from Granting Summary Judgment to Ford on the Quid Pro Quo Claim.

Plaintiff argues that because the district court granted her leave to allege the quid pro quo claim on the 12(b)(6) record, the law of the case doctrine prevented the court from granting summary judgment on that claim on the Rule 56 record. This argument fundamentally misunderstands both the law of the case doctrine and the difference between a 12(b)(6) record (a party's allegations) and the Rule 56 record (actual evidence). Plaintiff cites no authority for the extraordinary proposition which—if taken to its logical conclusion—would mean that a

trial court could *never* grant summary judgment on a claim if it allowed a party to assert the claim in an amended complaint.

The purpose of the law of the case doctrine is "to ensure that the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*." *Howe v. City of Akron*, 801 F.3d 718, 739 (6th Cir. 2015) (quoting *Sherley v. Sebelius*, 689 F.3d 776, 780 (D.C. Cir. 2012)). It "comes into play only with respect to issues previously determined." *Quern v. Jordan*, 440 U.S. 332, 347 n.18 (1979). But in ruling on Plaintiff's motion for leave to amend, the issue the district court was deciding was *not* whether Plaintiff established a genuine dispute of material fact sufficient to defeat Ford's motion for summary judgment. The Court was deciding whether Plaintiff's proposed claim was "futile"— that is, whether it would "survive a motion to dismiss." *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 355 (6th Cir. 2014).

In opposing Plaintiff's motion for leave to amend, for example, Ford argued, among other things, that Plaintiff had not alleged that Rowan was her supervisor; had failed to allege that she was actually denied training, which, in any event, does not constitute a tangible employment action as a matter of law; and had failed to allege any quid pro quo

46

activity.  *See* Opp. to Mot. for Leave to Amend, R. 38, PageID# 489–97. The court granted Plaintiff's motion in part, finding that the proposed quid pro quo claim was "not futile."  Opinion & Order, R.45, PageID# 649.

In granting leave to amend, the court was not, as Plaintiff contends, engaging in "a Rule 56 summary judgment analysis."  Br. at 41.  The court (correctly) noted that "[d]ismissal is proper under Rule 12(b)(6) 'only if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle him or her to relief.'"  Opinion & Order, R.45, PageID# 648 (quoting *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008)).  The district court's futility determination was therefore based on "the facts as alleged in the amended complaint," not on "the record evidence."  *Vittetoe v. Blount Cnty., Tenn.*, 861 F. App'x 843, 845 (6th Cir. 2021).

It would have been manifestly improper for the district court to apply a summary judgment standard to evaluate Plaintiff's proposed amendment, given that summary judgment concerns "whether the record in th[e] case contain[s] a genuine issue of triable fact," which is "a different and significantly more demanding standard than the Rule 12(b)(6) standard applicable to this case."  *McMillan v. Collection*

47

*Professionals Inc.*, 455 F.3d 754, 760 (7th Cir. 2006); *see also* Opinion & Order, R.100, PageID# 1963 (district court characterizing Plaintiff's argument as "misleading" and that "[t]he standard of review at the summary judgment stage is not nearly so deferential, and thus the Court's prior statement is not, in and of itself, sufficient to establish that there is a genuine issue of fact as to whether Rowan was Plaintiff's supervisor for purposes of a quid pro quo claim.").[3]

This Court has held squarely that "a court cannot be prevented from ruling on the merits of an amended claim or defense merely because that same court has granted leave to amend." *Maple Hill Apartment v.*

---

[3] Plaintiff argues that the district court "looked beyond the pleadings, even citing deposition testimony" in determining futility of amendment, which meant that "any 12(b)(6) analysis was actually converted into a Rule 56 summary judgment analysis." Br. at 41 (citing *Max Arnold & Sons, LLC v. WL Hailey & Co, Inc.*, 452 F.3d 494, 503 (6th Cir. 2006)). That is wrong. The district court nowhere suggested it was issuing a summary judgment ruling, and doing so without allowing the parties to present evidence in support and opposition of summary judgment would have been error. *See Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 831–32 (reversing grant of summary judgment where plaintiff lacked notice that court was "considering granting summary judgment on alternative grounds" and was therefore prevented from "s[eeking] or produc[ing] additional evidence to defend against summary judgment."). *The Max Arnold & Sons* case Plaintiff cites is completely inapposite, as it did not concern a motion for leave to amend. Plaintiff cites no authority for the proposition that a motion for leave to amend may be "converted" into a motion for summary judgment.

*Pierce*, 1986 WL 17248, at *2 (6th Cir. July 17, 1986). The law of the case doctrine does not invariably prevent a court from revisiting its own previous rulings because it "is a prudential practice; a court may revisit earlier issues, but should decline to do so to encourage efficient litigation and deter 'indefatigable diehards.'" *Howe*, 801 F.3d at 740 (quoting 18B Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction and Related Matters* § 4478 (4th ed. 2015)); *see also McKenzie v. BellSouth Telecommc'ns, Inc.*, 219 F.3d 508, 512 n.3 (6th Cir. 2000) (noting that the law of the case doctrine "is directed to a court's common sense and is not an inexorable command.").

Put simply, the fact that the district court granted Plaintiff leave to assert a claim in no way prevented the court from subsequently granting Ford summary judgment on that claim.

## B. The District Court's Grant of Summary Judgment on the Quid Pro Quo Claim Was Correct.

Plaintiff fails to identify any genuine issue of material fact with respect to whether Ford subjected her to a tangible employment action by someone with supervisory powers. She simply reprises, in an extended string cite, the same inapposite, out-of-circuit cases that the

district court properly rejected as being inconsistent with Michigan law. The district court's grant of summary judgment should be affirmed.

To establish a claim for quid pro quo harassment under the ELCRA, an employee must demonstrate, by a preponderance of the evidence: "(1) that she was subject to any of the types of unwelcome sexual conduct or communication described in the statute, and (2) that her employer or the employer's agent used her submission to or rejection of the proscribed conduct as a factor in a decision affecting her employment." *Chambers v. Trettco, Inc.*, 614 N.W.2d 910, 915 (Mich. 2000). The second prong of the test requires a showing that "a decision regarding a 'tangible employment action'" was made by someone with "supervisory powers"—that is, someone "in a position to offer tangible job benefits in exchange for sexual favors or, alternatively, threaten job injury for a failure to submit." *Id.* at 919–20. "[O]nly persons with supervisory powers could ever effectively make" a decision regarding a tangible employment action. *Id.* at 920.

In granting Ford's renewed summary judgment motion, the district court found no support for Plaintiff's contention that Ford could be held vicariously liable for Rowan's actions based on a "de facto supervisory authority" theory of liability, according to which Mahoney and Markavich

purportedly "allow[ed] Rowan 'to train or not train Plaintiff as he saw fit and report her progress or lack thereof back to them, thereby jeopardizing her employment.'" Opinion & Order, R.100, PageID# 1963. On appeal, Plaintiff simply reasserts that "Ford delegated Rowan with supervisory authority over Johnson" and that "[t]his claim should have easily survived summary judgment." Br. at 43 (collecting cases). But she does nothing to explain the lack of any evidence in the summary judgment record that supported the district court's ruling.

Rule 56 "require[s] that the party seeking to avoid summary judgment must point to evidence in the record demonstrating a genuine dispute of material fact. A plaintiff cannot simply sit back and highlight deficiencies in the defendant's argument without providing some affirmative support for its own position." *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012); *see also U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1191 ("It is well settled that the non-moving party must cite specific portions of the record in opposition to a motion for summary judgment, and that the court is not required to search the record for some piece of evidence which might stave off summary judgment."); Fed. R. Civ. P. 56(c)(1)(A) (requiring non-

moving party to "cit[e] to particular parts of materials in the record" to defeat summary judgment).

Plaintiff provided *no* evidentiary support for her claim that she suffered a tangible employment action, or that Rowan exercised any sort of supervisory authority over her. In fact, she does not cite *any record evidence at all* in her discussion of the merits of her quid pro quo claim. As a process coach like Plaintiff, Rowan did not have authority to hire, fire, transfer, promote, demote, discipline, or otherwise impose tangible changes to the conditions of Plaintiff's employment. *See* Mot. for Summ. J., Ex. L, R.51-15, PageID# 987; *id.*, Ex. F, R.51-9, PageID # 961.

Plaintiff also misconstrues the law in suggesting that Rowan exercised sufficient supervisory authority over her *simply because* he (supposedly) provided some sort of training. As courts in this Circuit have recognized, coworkers can and often do train their colleagues, without exercising supervisory authority. *See*, *e.g.*, *Holland v. Best Buy Stores, L.P.*, 2018 WL 4679610, at *9 (E.D. Mich. Sept. 28, 2018) (reasonable to expect employee to "teach, coach, and train his coworkers"); *Zackery v. Auto Air Composites, Inc.*, 1993 WL 146687, at *1 (W.D. Mich. Feb. 17, 1993) (describing use of coworkers to train new

employee). Training does not fall within the scope of "one of the traditional 'supervisory' functions" recognized by courts, "such as hiring, firing, or compensation." Opinion & Order, R.100, PageID# 1970; *see also* *Chambers*, 614 N.W.2d at 916.

Plaintiff argues nevertheless that "[c]ourts have repeatedly found" that the denial of training can support a quid pro quo harassment claim, pointing to three out-of-circuit decisions involving claims under Title VII. Each involved harassment by the plaintiff's formal supervisor and is thus easily distinguishable from the present case.

In *Carrero v. New York City Housing Authority*, 890 F.2d 569 (2d Cir. 1989), the plaintiff experienced "the loss of a tangible job benefit" by receiving "deficient training" coupled with "an unfair evaluation of her work, and a subsequent demotion." *Id.* at 579. Of course, it is well established that a demotion can support a quid pro quo harassment claim, but Plaintiff does not allege that she was demoted here. *See* *Chambers*, 614 N.W.2d at 916 (describing "authority to hire, fire, discipline, or promote" as falling within the realm of traditional supervisory authority). In fact, after Plaintiff's training with Rowan ended, she was moved from the Engine Line to the Chassis 4/5 Line,

which both Markavich and Plaintiff herself agreed was a more favorable line, and thus a promotion. Mot. for Summ. J., Ex. C, R.51-5, PageID# 818; Mot. for Summ. J., Ex. A, R.51-2, PageID# 761. Nor did Plaintiff receive an "unfair evaluation"—Markavich testified that he thought Plaintiff was performing satisfactorily. Mot. for Summ. J., Ex. C, R.51-5, PageID# 818. And, unlike here, the alleged harasser in *Carrero* was the plaintiff's formal supervisor, whose evaluations of plaintiff's performance led to her reassignment. *See Carrero*, 890 F.2d at 573 ("Most importantly, for purposes of this suit, [the defendant] became [the plaintiff]'s immediate superior. As [the defendant]'s principal assistant, she relied on his training to learn those procedures and practices required of an Assistant Superintendent. [The defendant] was responsible for providing written evaluations of appellant's performance."). Rowan was not Plaintiff's supervisor and had no such authority here.

Plaintiff also relies on *Cruz v. New York State Department of Corrections and Community Supervision*, 2014 WL 2547541 (S.D.N.Y. June 4, 2014). But the court there held that the plaintiff had alleged sufficient facts to support an inference that the alleged harasser—the

54

plaintiff's formal supervisor (*id.* at *2)—engaged in quid pro quo harassment by failing to inform him of his selection for a training opportunity. *Id.* at *5. In so holding, the court noted that the "denial of professional training opportunities may constitute an adverse employment action, but only where an employee can show material harm from the denial, such as a failure to promote or a loss of career advancement opportunities." *Id.* *Cruz* is, of course, distinguishable because it was decided on a motion to dismiss, not summary judgment. But even if denial of training could constitute a tangible employment action, *Cruz* instructs that Plaintiff was, at the very least, required to provide evidence that the alleged denial of training led to a failure to promote her or a similar employment action. *See id.*; *accord Douglas v. Caldera*, 29 F. App'x 257, 258 (6th Cir. 2002) (alleged denial of training opportunity not materially adverse where plaintiff "was not demoted, she was not denied a promotion, she did not lose any wages or benefits, and the duties of her position were not materially changed in a manner that seriously impacted the conditions of her employment"). Plaintiff has not made that showing here. *See supra* at 53–54.

*Pitter v. Community Imaging Partners, Inc.*, 735 F. Supp. 2d 379 (D. Md. 2010), is inapposite for similar reasons. There, the alleged harasser was the plaintiff's formal supervisor and "the most senior manager at the Greenbelt facility." *Id.* at 383. And the plaintiff experienced an adverse employment action when she was "ultimately fired from her position." *Id.* at 396. *Pitter* is nothing like this case, and as the district court correctly noted, Plaintiff cites no authority for the proposition that "authority over training—when not coupled with authority over one of the traditional 'supervisory' functions, such as hiring, firing, or compensation—is sufficient to give an employee supervisory authority." Opinion & Order, R.100, PageID# 1970.

Finally, Plaintiff asserts that "[t]here is ample case law supporting denial of summary judgment on this claim," citing a long string of cases that the district court already considered and rejected in granting Ford's motion for summary judgment. Br. at 45–46. Plaintiff makes no effort to explain why the district court's rejection of her "de facto supervisory authority" theory was incorrect. The cases she cites all involved alleged harassers that held themselves out to the plaintiffs as possessing or

exercising traditional supervisory functions or are otherwise distinguishable.[4]

---

[4] *See LaMarca v. City of Niagara Falls*, 2016 WL 8674161, at \*12 (W.D.N.Y. Feb. 12, 2016) (noting triable issues of fact "as to whether [the harasser] held himself out to plaintiff as having [supervisory] authority," specifically over hiring); *Hernandez v. Jackson, Lewis, Schnitzler & Krupman*, 997 F. Supp. 412, 414 (S.D.N.Y. 1998) (alleged harasser promised to use his "long-term relationship" with supervisor to help the plaintiff "obtain overtime work assignments" and "otherwise remedy the oppressive working conditions to which [the supervisor] was subjecting her."); *Scarbary v. Ga. Dep't of Nat. Resources*, 2017 WL 1132726, \*9 (genuine issue of material fact as to whether alleged harasser was de facto supervisor where "[t]here was uncertainty with respect to the management structure" at the employer and the harasser testified that he had "influence with [the supervisor] in determining which employees were assigned" to permanent roles); *Martinez v. Bd. of Educ. of Prince George's Cnty.*, 2020 WL 4926610, at \*7 (D. Md. Aug. 21, 2020) (alleged harasser "told [plaintiff] that he would help her achieve the promotion," that is, he "apparently brought the promotion about."); *Sowers v. Kemira, Inc.*, 701 F. Supp. 809, 816 (S.D. Ga. 1988) ("[E]ven if [the alleged harasser's] role could be characterized as mere paperwork, . . . it is clear that no final decision would be made by [vice president of operations] until promotion and salary range recommendations were forwarded to him [by the alleged harasser]."); *Perks v. Town of Huntington*, 251 F. Supp. 2d 1143, 1155 (E.D.N.Y. 2003) (genuine issue of material fact as to whether alleged harasser was de facto supervisor where alleged harasser "assigned [the plaintiff] work, reviewed his memos, and generally ordered him to report directly to her."); *Gostanian v. Bendel*, 1997 WL 214966, at \*6 (S.D.N.Y. Apr. 25, 1997) ("Although [the alleged harasser] is not [plaintiff]'s official supervisor, [plaintiff] claims that [the alleged harasser] does hold the power to alter the terms and conditions of his employment through the overwhelming influence she exerts over [store's managing director]."); *Barhouma v. Athenian Assisted Living*, 2015 WL 5437786, at \*5 (N.D. Ohio Sept. 15, 2015) (relying on single case interpreting Ohio law that did not expressly provide for *quid pro quo*

Plaintiff does not identify any genuine dispute of material fact as to whether she was subject to a tangible employment action by a person with supervisory powers, and there is no support for Plaintiff's de facto supervisor theory of liability, much less one premised on an alleged failure to train. The district court did not err in granting summary judgment to Ford.

## CONCLUSION

This Court should affirm the denial of Plaintiff's motion for a new trial, the denial of leave to amend the complaint to allege a retaliatory termination claim and the related in limine ruling, and the district court's grant of summary judgment in favor of Ford on Plaintiff's quid pro quo harassment claim.

claims); *Heskin v. Insite Advert., Inc.*, 2005 WL 407646, at *17–18 (S.D.N.Y. Feb. 22, 2005) (genuine issue of material fact as to whether alleged harasser was de facto supervisor where, among other things "[alleged harasser] worked for [plaintiff's employer]'s largest client, and in that role had 'supervisory' authority over [plaintiff] and the [employer]'s programs," "plaintiff apparently felt she had to answer to [employer's CEO] about [alleged harasser]'s complaints," and plaintiff "testified that she reported to [alleged harasser] at the Atlanta event.").

Dated:  October 21, 2024

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Blaine H. Evanson*
     Blaine H. Evanson

**KIENBAUM HARDY VIVIANO PELTON & FORREST, P.L.C.**
ELIZABETH P. HARDY
THOMAS J. DAVIS
280 N. Old Woodward Avenue
Suite 400
Birmingham, Michigan 48009
(248) 645-0000
ehardy@khvpf.com
tdavis@khvpf.com

**GIBSON, DUNN & CRUTCHER LLP**
BLAINE H. EVANSON
3161 Michelson Drive
Irvine, California 92612
(949) 451-3805
bevanson@gibsondunn.com

BRIAN YEH
200 Park Avenue
New York, New York 10166
(212) 351-6252
byeh@gibsondunn.com

*Attorneys for Defendant-Appellee Ford Motor Company*

59

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 32(a)(7) because the brief contains 12,056 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Sixth Circuit Rule 32(b)(1).

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(4), (5), and (6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP


By: */s/ Blaine H. Evanson*
Blaine H. Evanson

*Attorneys for Defendant-Appellee Ford Motor Company*

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Pursuant to Sixth Circuit rules 28(b)(1)(A)(i) and 30(g)(1), Ford designates the following docket entries from E.D. Michigan Docket No. 2:19-cv-10167-CAD-EAS.

| Docket Number | Description | PageID# Range |
|---|---|---|
| R.1 | Complaint | 1–11 |
| R.15 | Order | 66 |
| R.27 | Motion for Leave to File First Amended Complaint | 388–408 |
| R.27-1 | Proposed First Amended Complaint | 395–408 |
| R.38 | Opposition to Motion for Leave to Amend | 489–97 |
| R.38-3 | Opposition to Motion for Leave to Amend, Exhibit B | 512 |
| R.45 | Opinion & Order | 636–55 |
| R.51 | Motion for Summary Judgment | 693–727 |
| R.51-2 | Motion for Summary Judgment, Exhibit A | 761 |
| R.51-5 | Motion for Summary Judgment, Exhibit C | 818 |
| R.51-9 | Motion for Summary Judgment, Exhibit F | 961 |
| R.51-15 | Motion for Summary Judgment, Exhibit L | 987 |
| R.59 | Reply in Support of Motion for Summary Judgment | 1561–76 |
| R.61 | Amended Opinion & Order | 1630 1637–42 |

| | | 1644 |
|---|---|---|
| R.62 | Judgment | 1646 |
| R.69 | Notice of Appeal | 1708 |
| R.80 | Order | 1796–1801 |
| R.100 | Opinion & Order | 1937–72 |
| R.194 | Jury Instructions | 4075 |
| R.199 | 9/15/23 Trial Transcript | 4354–55, 4358–59 |
| | | 4360 |
| | | 4366–67 |
| | | 4375 |
| | | 4379 |
| | | 4344 |
| | | 4351–53 |
| | | 4416 |
| | | 4425–26 |
| | | 4437 |
| | | 4442 |
| R.200 | 9/18/23 Trial Transcript | 4513–63 |
| | | 4586 |
| | | 4588 |
| | | 4605–06 |
| | | 4619 |
| | | 4627–28 |
| | | 4631 |
| | | 4633 |
| | | 4659 |
| | | 4665 |
| | | 4674 |
| | | 4681–82 |
| | | 4698 |
| R.201 | 9/19/23 Trial Transcript | 4733 |
| | | 4740 |
| | | 4743 |
| | | 4805–06 |
| | | 4814–15 |
| | | 4849–52 |
| | | 4854–55 |
| | | 4857–59 |

| | | 4859 |
|---|---|---|
| | | 4890 |
| | | 4891 |
| | | 4893–95 |
| | | 4897, 4793 |
| | | 4900 |
| | | 4903 |
| | | 4906–07, 4913 |
| | | 4920 |
| R.203 | 9/20/23 Trial Transcript | 5046–52 |
| | | 5077–78 |
| | | 5082–083 |
| R.204 | 9/21/23 Trial Transcript | 5163 |
| | | 5167 |
| | | 5171 |
| | | 5175 |
| | | 5179 |
| | | 5188 |
| | | 5191–93 |
| | | 5198–99 |
| | | 5201 |
| | | 5204 |
| | | 5208 |
| | | 5210 |
| | | 5248–50 |
| | | 5260–61 |
| | | 5266–68 |
| R.210 | 09/25/23 Trial Transcript | 5530–32 |
| R.211-2 | Plaintiff's Trial Exhibit 3 | 5544–62 |
| R.211-11 | Plaintiff's Trial Exhibit 23 | 5591 |
| R.211-14 | Plaintiff's Trial Ex. 38-A | 5595 |
| R.211-15 | Plaintiff's Trial Exhibit 38-b | 5599–601 |
| R.213-1 | Plaintiff's Trial Exhibit 134-R | 5711–12 |

| R.213-3 | Plaintiff's Trial Exhibit 138-R | 5716–17 |
|---|---|---|
| R.213-4 | Plaintiff's Trial Exhibit 139-R | 5719–21 5720 |
| R.216 | Motion for New Trial | 6008–34 |
| R.218 | Reply in Supp. of Mot. for New Trial | 6066–68 |
| R.220 | Order | 6092–93 |
| R.222 | Notice of Appeal | 6099–100 |